UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WILLIAM STRATTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-02195-JRS-DLP |
| | ) | |
| DENIS MCDONOUGH, | ) | |
| | ) | |
| Defendant. | ) | |

**Order on Motion for Summary Judgment**

Plaintiff William Stratton sued his former employer, the Department of Veterans Affairs (the "VA"), alleging that he was harassed because of his race and disability.[1] Before the Court is the VA's Motion for Summary Judgment, (ECF No. 45). For the following reasons, the Court grants the Motion.

**Background**

Stratton is an African American man who suffers from a disability. (Stratton Dep. 13–14, ECF No. 53-1.) An incident involving coworker Kim Wahlers serves as the primary basis for his claims. (*Id.* at 48, 62.) Wahlers was a Caucasian woman who used a "demeaning and degrading tone of voice" and "talked down" to African American employees, made racially inappropriate jokes, told Stratton not to

---

[1] In his Complaint and Statement of Claims, Stratton asserts that he was also harassed because of his sex. (Am. Compl. ¶ 22, ECF No. 18; Statement Claims ¶ 1, ECF No. 44.) However, Stratton's brief exclusively argues that the harassment occurred because of his race and disability. (*See, e.g.*, Pl.'s Br. 17, ECF No. 52 ("Stratton's harassment was based on both his race and his disability.").) Accordingly, any theory that Stratton was harassed because of his sex has been waived. *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (perfunctory and undeveloped arguments are waived).

1

"mansplain" things to her, and made comments about Stratton's disability when Stratton used medical leave. (*Id.* at 48, 62, 68–70, 72–74, 84–85; Pl.'s Resp. Interrog. ¶ 2, ECF No. 53-10.)

On June 7, 2018, Wahlers was processing employee timecards when Stratton approached and indicated that there was a problem with his timecard and Wahlers should not submit it. (Stratton Dep. 62, ECF No. 53-1.) Wahlers then started screaming at Stratton, told him to "shut the hell up," and put her finger in Stratton's face and told him to get away from her. (*Id.* at 62–63.) Wahlers then hit Stratton's knee "a couple times" with her walker, including once after Stratton told her not to do so again. (*Id.* at 62–64, 89.) Wahlers then left the office, and Stratton also left for the day. (*Id.* at 90.)

The next day, Stratton called his Union representative, who advised him to report the incident to the police, which Stratton did. (*Id.* at 90–91; ECF No. 45-5.) The VA learned of the incident and requested a statement from Wahlers the same day, on June 8. (ECF No. 45-6; Myers Dep. 40–42, ECF No. 45-4.) The VA suggested to the Union that Stratton move locations to avoid Wahlers, but Stratton refused, believing that he should not have to be the one to move. (Stratton Dep. 103–04, ECF No. 53-1.) One week later, the VA moved Wahlers into a separate room, away from Stratton. (*Id.* at 101–03; Stratton Aff. ¶ 23, ECF No. 45-2.) In the meantime, Stratton did not have any interaction with Wahlers. (Stratton Dep. 101–03, ECF No. 53-1.)

On June 15, the VA issued a no contact order to Wahlers, prohibiting any communication or contact with Stratton, although Stratton was unaware of this

2

order.  (*Id.* at 105–07; ECF No. 45-7.)  The Marion Superior Court also issued a no contact order after Stratton indicated that he wanted to pursue criminal charges against Wahlers.  (ECF No. 53-8.)

On June 27, Stratton had to enter the room to which Wahlers had been relocated. (Stratton Aff. ¶¶ 30–33, ECF No. 45-2.)  Stratton saw Wahlers, felt uncomfortable, and called the police to inform them that Wahlers was in violation of the no contact order.  (Stratton Dep. 110–12, ECF No. 53-1.)  Upon arrival, the police indicated that the order did not prohibit Wahlers from being in the building.  (*Id.* at 113–14.)  After this incident, Joshua Myers, the head of Stratton's department, repeatedly tried to talk to Stratton about the Wahlers issue, but Stratton informed Myers that he did not wish to discuss anything without an attorney or Union representative present. (*Id.* at 118–21.)  Myers did not relent until Stratton stated that Myers was harassing him and left the area.  (*Id.*)

On July 2, the VA permanently reassigned Wahlers to another building.  (*Id.* at 104–05, 117; Stratton Aff. ¶ 23, ECF No. 45-2.)  Apart from seeing Wahlers in the building on occasion prior to this permanent reassignment, Stratton had no interaction or communication with Wahlers after the initial incident on June 7. (Stratton Dep. 116–17, ECF No. 53-1.)

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine only "if the

3

evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

## Discussion

Stratton brings his harassment claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and 42 U.S.C. § 1981. However, any claim under the Americans with Disabilities Act is foreclosed, as the Act does not apply to agencies of the federal government, including the VA. *Steffen v. Donahoe*, 680 F.3d 738, 742 n.1 (7th Cir. 2012) (disability claims against an agency of the federal government are brought under the Rehabilitation Act, not the Americans with Disabilities Act). Similarly, § 1981 does not apply to actions taken by federal employers. *Eiler v. McAleenan*, 770 F. App'x 271, 273 (7th Cir. 2019); *Davis v. U.S. Dep't of Just.*, 204 F.3d 723, 725 (7th Cir. 2000).

Stratton's harassment claim is governed by the same standard, whether analyzed under the Rehabilitation Act or Title VII. For Stratton to prove that the harassment amounted to a hostile work environment, he must show that (1) he was subjected to unwelcome harassment; (2) the harassment was based on a protected characteristic, such as race or disability; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working

4

environment; and (4) there is a basis for employer liability. *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 976 (7th Cir. 2021) (reciting standard under Title VII); *Bellino v. Peters*, 530 F.3d 543, 551 (7th Cir. 2008) (assuming the Rehabilitation Act provides a cause of action for hostile work environment claims and that the Title VII standard applies). Even assuming that a reasonable jury could find in Stratton's favor on the first three elements, no reasonable jury could find that there is a basis for employer liability. Therefore, the VA is entitled to summary judgment. *See, e.g.*, *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048–49 (7th Cir. 2000) ("We do not decide whether a hostile work environment existed because the question whether [the defendant] took prompt and effective remedial action is dispositive here.").

The standard for employer liability depends on whether the harassment was perpetrated by the plaintiff's supervisor or coworker. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The Parties appear to agree that Wahlers was Stratton's coworker, although Stratton initially suggested in his Complaint that Wahlers might have been a supervisor. (*See* Pl.'s Br. 24, ECF No. 52 (arguing the VA was "negligent," the standard for coworker harassment); Am. Compl. ¶ 9, ECF No. 18 (referring to Wahlers as "Plaintiff's manager").) In any event, the evidence establishes that Wahlers was not a supervisor. *See Vance*, 570 U.S. at 443 (noting that the question of supervisor status can "very often be resolved as a matter of law before trial"). There is no evidence to suggest that Wahlers had "the authority to effect a tangible change" in Stratton's terms or conditions of employment. *Id.* at 440. In contrast, Myers, the

5

head of Stratton's department, testified that Wahlers was not employed in a supervisory role and did not have the ability to terminate or discipline an employee. (Myers Dep. 13, ECF No. 45-4.) Further, Stratton listed his supervisors in his affidavit, and he did not include Wahlers on that list. (Stratton Aff. ¶ 6, ECF No. 45-2.) Therefore, the Court concludes Wahlers was Stratton's coworker and assesses the VA's liability against the standard for coworker harassment.[2]

An employer is liable for harassment perpetrated by coworkers if it is "negligent either in discovering or remedying the harassment." *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (quoting *Williams v. Waste Mgmt. of Ill.*, 631 F.3d 1021, 1029 (7th Cir. 2004)). "Put differently, 'the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Williams*, 361 F.3d at 1029 (quoting *Tutman v. WBBM-TV Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000)).

---

[2] Moreover, the VA cited admissible evidence in support of its assertion that Wahlers was not a supervisor, and Stratton did not "specifically controvert[]" that assertion, nor is there evidence that would allow the Court to draw the reasonable inference that Wahlers was a supervisor. S.D. Ind. L.R. 56-1(f); (*see also* Pl.'s Br. 12–13, ECF No. 52 (noting "objections and disputes to Defendant's material facts" and not objecting to or disputing fact that Wahlers was not a supervisor).) Accordingly, the Court assumes that the fact that Wahlers was not a supervisor is "admitted without controversy." *Id.*; *see also* Fed. R. Civ. P. 56(e) (if party fails to properly address another party's assertion of fact, the Court may consider the fact undisputed and grant summary judgment if warranted). Finally, Stratton did not argue in his brief that Wahlers was his supervisor or respond to the VA's argument that Wahlers was not a supervisor; Stratton's sole argument is that "the VA's subsequent actions, after learning of Mr. Stratton's harassment, failed to remediate Stratton's harassment." (Pl.'s Br. 22–24, ECF No. 52.) Undeveloped arguments are waived. *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006).

The VA took prompt and appropriate corrective action. The same day Stratton reported the incident, the VA began its investigation by requesting a written statement from Wahlers. (ECF No. 45-6; Myers Dep. 40–42, ECF No. 45-4.) A prompt investigation "is the hallmark of a reasonable corrective action." *Porter*, 576 F.3d at 636 (cleaned up); *see also Sutherland v. Wal-Mart Stores, Inc.*, 632 F.3d 990, 994 (7th Cir. 2011) (employer's investigation was "sufficiently prompt" when it began investigation the day it received the complaint). One week later, the VA moved Wahlers to a different work area, away from Stratton. (Stratton Aff. ¶ 23, ECF No. 45-2; Stratton Dep. 101–03, ECF No. 53-1.) And that same week, the VA imposed a no contact order against Wahlers, prohibiting her from having any contact with Stratton. (ECF No. 45-7.) Ultimately, the VA permanently reassigned Wahlers to another building, and Stratton never interacted with her again. (Stratton Dep. 117, ECF No. 53-1.) Moreover, Stratton testified that after the initial June 7 incident, Wahlers never spoke to, touched, or otherwise interacted with Stratton. (*Id.* at 117–18.) Not only did the VA take "prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring," but its actions did, in fact, prevent the harassment from recurring. That is further evidence that its actions were appropriate. *Porter*, 576 F.3d at 637 (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 676 (10th Cir. 1998)) (noting that while "not the sole factor to be considered," "stoppage of harassment shows effectiveness").

Stratton argues that the initial relocation of Wahlers was ineffective, as he still saw her "consistently," suffered "constant paranoia and fear" that he would run into

7

her again, and had to take steps to avoid her. (Pl.'s Br. 24, ECF No. 52.) But complete separation is not required; all that is required is "prompt action reasonably calculated to end the harassment and reasonably likely to prevent the conduct from recurring." *Berry v. Delta Airlines, Inc.,* 260 F.3d 803, 806, 813 (7th Cir. 2001) (holding that employer responded reasonably to accusations of harassment when it promptly investigated, required employees to watch sexual harassment training video, and arranged harasser's and plaintiff's schedules, nearly a month after receiving initial complaint, so they would only work together 90 minutes each day, even though plaintiff and harasser often had contact during that time); *see also Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 535–36 (7th Cir. 1993) (holding that employer's response was reasonably likely to prevent harassment from recurring even though it "did not meet [the plaintiff's] expectations," where employer began investigation the day after receiving the complaint and transferred the harasser within five weeks of learning that the plaintiff was not interested in transferring, despite the fact that the two saw each other on occasion after the complaint was filed). The VA's steps satisfy this standard. *See Saxton*, 10 F.3d at 536 ("Whatever reasons there might be for the company's failure to take additional steps . . . are irrelevant absent evidence suggesting that the transfer was not reasonably likely to prevent the harassment from recurring.").

Stratton advances one final argument. He points to the fact that the VA suggested to the Union that Stratton should move to another building, which would have increased Stratton's commute and "effectively punished" him for the harassment.

8

(Pl.'s Br. 23, ECF No. 52; Stratton Dep. 103–04, ECF No. 53-1.) Stratton argues that a remedial measure that makes the victim of harassment worse off is ineffective per se. (Pl.'s Br. 23, ECF No. 52); *see also Guess v. Bethlehem Steel Corp.*, 913 F.2d 463, 465 (7th Cir. 1990) (noting that while such a principle had not been found in a previous case, it "seems . . . to state the law correctly"). But the suggestion to move Stratton was never implemented. Or, in the words of the *Bethlehem Steel Corp.* court: "[f]ine; but that is not what happened here." 913 F.2d at 465. Stratton was never "made worse off" by virtue of a remedial measure. Any argument premised on that notion therefore fails.

In conclusion, no reasonable jury could find that the VA was negligent in remedying the harassment. Accordingly, the VA is entitled to summary judgment.

## Conclusion

The VA's Motion for Summary Judgment, (ECF No. 45), is **granted**. Stratton's discrimination claims are **dismissed with prejudice**. Final judgment shall issue in a separate order.

**SO ORDERED.**

Date: 1/4/2022

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered parties of record via CM/ECF.